John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jennifer S. Coleman, Bar No. 213210
jcoleman@hopkinscarley.com
C. Gideon Korrell, Bar No. 284890
gkorrell@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:      (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Plaintiff
PACE Anti-Piracy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PACE ANTI-PIRACY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>INSIDE SECURE, a French legal entity, and INSIDE SECURE CORP., a Delaware corporation,<br><br>Defendants. | CASE NO.  4:17-cv-05860-HSG<br><br>**PLAINTIFF PACE ANTI-PIRACY, INC.'S SUPPLEMENTAL BRIEFING IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date:   Vacated<br>Time:             TBD<br>Location:        TBD<br>Judge:           Hon. Haywood S. Gilliam, Jr.<br>Trial Date:      None |

870\2936186.4

PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;
4:17-CV-05860-HSG

## I.  INTRODUCTION

At the Court's request, Plaintiff PACE Anti-Piracy, Inc. ("PACE") respectfully submits this supplemental brief to assist in determining whether, in light of *Berkheimer*, the inventive concept determination of *Alice* step two can be made in this case on a motion to dismiss.[1] The Federal Circuit in *Berkheimer* and in other prior cases has recognized that there are situations where a factual inquiry may be necessary when performing Step Two in the *Alice* analysis. This factual inquiry is intended to determine "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). *Berkheimer* clarified that there are very few instances when doing so on a motion to dismiss or summary judgment is appropriate.

In the present case, the Court can deny Defendants' motion on the merits and without a factual inquiry because the specification of the '149 Patent clearly sets forth how the claimed inventions "involve more than performance of 'well-understood, routine, [and] conventional activities previously known in the industry.' " *Id.* at 1367 (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014)). Defendants' 12(b)(6) motion presented nothing other than attorney argument to contradict this point, which is insufficient. Thus, the statements made in the '149 Patent specification regarding how the inventions are not routine or conventional are the only facts presented to this Court on Defendants' 12(b)(6) motion. Therefore, there is no factual dispute regarding the inventiveness of the claims of the '149 Patent and the Court can deny Defendants' motion on its merits.

If the Court were to find that an underlying factual inquiry is necessary to determine whether the inventiveness of the claims of the '149 Patent "transform the . . . abstract idea into patent-eligible invention," doing so at the motion to dismiss stage is not appropriate. The factual inquiry requires the understanding of what is well-understood, routine and conventional to a skilled artisan in the relevant field and that cannot be determined at the motion to dismiss stage. *Berkheimer*, 881 F.3d at 1368.

---

[1] In submitting this supplemental brief, PACE does not waive its arguments made in its opposition with respect to the claims of the '149 Patent being eligible under Step One of the *Alice* analysis. PACE continues to hold firm its assertion that the claims of the '149 Patent are not abstract, improve the functionality of a computer through the prevention of software tampering, and are therefore patent eligible under the *Alice* Step One analysis.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

Defendants have not yet served their Patent L.R. 3-3 disclosures, which could identify prior art references that might give some indication as to what "is well-understood, routine and conventional." *Id.* at 1369 (noting that "[t]he mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional."). Further, claim construction has not begun in this case. This would also provide clarity as to how certain claim limitations would be understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (questioning the propriety of a district court granting a 12(b)(6) motion without claim construction, but reversing on other grounds).

### A.     *Berkheimer* and Other Cases Recognize that a Factual Inquiry May be Required in Certain Circumstances When Performing Step Two of the *Alice* Analysis

The determination of patent eligibility may only be conducted at the Rule 12(b)(6) or summary judgment stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (holding that patent ineligibility was <u>not</u> properly adjudicated at the 12(b)(6) stage for the asserted claims). A determination of patent eligibility cannot be conducted when there are "genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer*, 881 F.3d at 1368 (holding that patent ineligibility was <u>not</u> properly adjudicated at summary judgment for claims 4-7); *Aatrix*, 882 F.3d at 1125 (holding that patent ineligibility was <u>not</u> properly adjudicated at the 12(b)(6) stage for all asserted claims); *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that patent ineligibility was <u>not</u> properly granted at the 12(b)(6) stage for all claims).

The *Berkheimer* court recognized that "[p]atent eligibility has in many cases been resolved on motions to dismiss or summary judgment." *Berkheimer*, 881 F.3d at 1368.  However, the *Berkheimer* court explained that such decisions were upheld on appeal because "there [was] no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field." *Id.* (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) and *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

870\2936186.4

- 2 -

The Federal Circuit explained that a factual inquiry is required when the patent specification explains how the claim elements or claimed combinations are "directed to [an] arguably unconventional concept." *Berkheimer*, 881 F.3d at 1370. The court went on to explain that it could determine the patent eligibility of some claims as a matter of law while other claims required the additional factual inquiry, holding that these latter claims were not able to be decided at the summary judgment stage. *Id.* For the first set (claims 1-3 and 9 of Berkheimer's patent), the Federal Circuit upheld the district court's summary judgment determination that they were ineligible as a matter of law. *Id.* It cited to the patent owner's own admissions regarding the conventionality of the limitations in these claims, which eliminated the possibility of any factual dispute. *Id.* On the other hand, the court found that another set (claims 4-7 of the Berkheimer patent) "contain limitations directed to the arguably unconventional inventive concept described in the specification." *Id.* Because there were no admissions from the patent owner regarding conventionality of these claims, the court held that a factual inquiry was necessary to determine whether the claims "perform well-understood, routine, and conventional activities to a skilled artisan," which cannot be resolved on summary judgment. *Id.*

**B.    A Factual Inquiry is Not Required to Deny the 12(b)(6) Motion Because the Complaint and Patent Specification Clearly Demonstrate the Unconventionality of the Claimed Elements' and/or Claimed Combinations'**

On a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "The sources properly considered on a motion to dismiss [include] the complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882 F.3d at 1128. Defendants offer nothing but attorney argument to support their assertion that the asserted claims of the '149 Patent merely employ "standard programming techniques." This is insufficient under *Berkheimer* and its preceding line of cases.

The nature of the inventions disclosed in the '149 Patent is necessarily unconventional—it offers a solution to a "well known" ***problem*** that had plagued the music and software industries who, prior to the inventions claimed in the '149 Patent, had limited success in coming up with ways to prevent tampering and piracy. (Dkt. No. 1-1, Exhibit A, 1:18-21.) The '149 Patent identifies the conventional approaches to protecting products from tampering and piracy as including "encryption

schemes, digital signatures, and the use of license files of various types." (*Id.* at 33-35.) As described in PACE's opposition brief, the '149 Patent discloses an unconventional and non-routine approach of modifying a software application in both the source code domain and binary domain and then stripping certain information from the binary in order to make the runtime validation operations take place in a manner that is undetectable by a hacker. (Dkt. No. 42, 2:25-5:4.)

There are concrete allegations in both PACE's Complaint and the '149 Patent that support the fact that individual elements and the claimed combination contain inventive concepts that are not a well-understood, routine, or conventional activity. The Complaint gives one example of how the inventions claimed in the '149 Patent improve upon the industry's common practice of utilizing "single point (or small number of points) of validation which, if located and neutralized/bypassed by a hacker, render the software unprotected." (Dkt. No. 1, 3:6-8.) The specification and claims of the '149 Patent explain modifying a software program to include validation code embedded in various locations of the software application which, at runtime, performs partial checksum calculations of random-sized segments of the selected executable code blocks, thereby giving no indication to a hacker of when or where the integrity validation is taking place. (Dkt. No. 1-1, Exhibit A, 7:14-25.) This is in contrast to what that '149 Patent described as the conventional approach of performing validations in an identical (and therefore more easily traceable) manner. (*Id.* at 48-50.) Such a unique combination of steps is itself sufficient to meet *Alice* Step Two. *BASCOM*, 827 F.3d at 1350 ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces").

Further, there is nothing in the Complaint or the specification of the '149 Patent that concede to any claim limitations as being "well-understood, routine and conventional to a skilled artisan." *Berkheimer*, 881 F.3d at 1368. While *Berkheimer* acknowledged that "[p]atent eligibility has in many cases been resolved on motions to dismiss or summary judgment," the Federal Circuit explained that those cases involved circumstances where the patent owner conceded that the inventive concepts were routine and generic. *Id.* (distinguishing the facts in its case from those in *Content Extraction* and *Intellectual Ventures*).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

870\2936186.4                                          - 4 -

PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;
4:17-CV-05860-HSG

## C.   If the Court Finds That a Factual Inquiry Is Necessary, Doing So Now is Premature

To the extent that the Court finds that the '147 Patent claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," a factual inquiry is necessary to determine whether the concepts were well-understood, routine, and conventional to a skilled artisan at the time of the patent. *Berkheimer*, 881 F.3d at 1368. Unless the patent owner has admitted that these inventive concepts are routine or generic, the Court cannot determine this issue at the Rule 12(b)(6) stage. *Id.*

When a factual inquiry is required to determine patent eligibility, by definition it must take place after all the facts have been collected. Defendants have not identified a single piece of prior art that could give any indication as to what was routine and conventional at the origination time of the '149 Patent. Even if they had, this would only be the starting point because "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art." *Id.* at 1369. Furthermore, claim construction also could provide the answer to the state of the art at the time of the invention as well as determining the level of knowledge of a skilled artisan. *See Aatrix Software*, 882 F.3d at 1125 (in questioning whether determining patent ineligibility can be done before claim construction, the court stated that "[w]e have some doubt about the propriety of doing so").

## II.  CONCLUSION

For the forgoing reasons and the reasons set forth in PACE's opposition brief, the Court should deny Defendants' 12(b)(6) motion.

Dated:  March 23, 2018

HOPKINS & CARLEY
A Law Corporation

By: */s/ John V. Picone III*

John V. Picone III
Jennifer S. Coleman
C. Gideon Korrell
Attorneys for Plaintiff
PACE Anti-Piracy, Inc.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;
4:17-CV-05860-HSG